

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0413-08

**AUDREY R. LINTON, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRTEENTH COURT OF APPEALS
### MONTGOMERY COUNTY

**JOHNSON, J., filed a concurring opinion.**

### C O N C U R R I N G   O P I N I O N

During my years in practice, I represented a fair number of deaf clients with vastly differing abilities to communicate with me. Some could adequately communicate without an interpreter. On at least one occasion, I used the procedure that appellant now asserts would have been appropriate during her trial. My purpose in writing this concurrence is to pass on some of what I learned from my clients and their interpreters to judges who find themselves in circumstances similar to those presented here. If I am not entirely accurate, I hope that the deaf community will forgive my

ignorance.

By law, "a person may not interpret for a hearing-impaired individual at a court proceeding or advertise or represent that the person is a certified court interpreter unless the person holds an appropriate certificate under this subchapter." GOV'T CODE Ch. 57, § 57.026. Interpretation certificates are issued by the National Registry of Interpreters for the Deaf (RID) or the Board for Evaluation of Interpreters (BEI). "It should be noted that Texas law requires the use of an interpreter with BEI Court Interpreter Certification (CIC) or RID SC:L in Criminal or Civil Court proceedings." DHHS website: http://www.dars.state.tx.us/dhhs/beilvls.shtml.

"Relay interpretation," as used by the court below and the majority opinion, is termed in the deaf community as certified deaf interpretation or, in Texas, as intermediary interpretation. In such an interpretation, a communication passes from a hearing person to a hearing interpreter (a hearing person who interprets) to a deaf interpreter (a deaf person who interprets) to a deaf person. The response passes from deaf person to deaf interpreter to hearing interpreter to hearing person. It is absolutely necessary for communication between hearing individuals and some deaf individuals. Such deaf individuals may have additional challenges, such as mental retardation or mental illness, cerebral palsy, a low level of competence or a lack of education in commonly used modes of manual communication,[1] or low levels of ability to read or write.[2] A need for intermediary interpretation is not common, but when it exists, it is a necessity, not an option.

---

[1] Hearing households that include a hearing-impaired individual frequently create a familial sign language, commonly known as "home signs."

[2] The consensus of those who serve the deaf community appears to be that the mean reading level of deaf persons in the United States is approximately fourth grade, the level at which Dr. Andrews testified appellant functions. Having a high-school diploma may or may not indicate an adequate ability to read and understand written documents, nor may possession of a driver's license so indicate, as the licensing test may have been interpreted for the deaf person.

The issue for the trial court is how to determine what level of interpretation is appropriate. Most judges, and prosecutors, have little, if any, experience with deaf culture and are thus unprepared to accurately evaluate a defendant's level of understanding on their own. They may also become frustrated by the necessarily slow pace or misinterpret the deaf person's assertions.[3] Deaf persons are just like hearing persons, minus the ability to hear sounds. They do not want to be seen as stupid, so they may conceal their lack of understanding, just as many hearing persons conceal their illiteracy. Nodding of the head, especially continuous small nodding, does not mean that the deaf person understands or agrees, only that he is paying attention and trying to understand. A big nod may indicate understanding. Or not. Deaf persons may mirror another person's body language, so body language may or may not be indicative of understanding.

The first line of investigation is to inquire of the interpreter as to the ease or difficulty and the efficacy of interpreting for the defendant in question. Taking into account that interpreters have egos and some may not be comfortable with admitting that their interpretation is not getting through, a trial judge then has at least some information about the defendant's level of function. Another consideration in evaluating the situational level of function is the defendant's understanding of legal vocabulary, especially if the defendant is a first-time offender. The ability to understand is markedly affected by the use of words that are beyond a person's experience or educational level; a judge with an undergraduate degree in liberal arts might have problems with comprehension in a discussion about mesons and quarks. First-time offenders, even hearing ones, may be confused by terms

---

[3] On occasion, the original trial judge's pronouncements lacked sensitivity and, at the hearing on appellant's request to re-open the hearing on the motion to suppress, the state misunderstood appellant's complaint, saying that she was not incompetent to stand trial rather than addressing her actual complaint–that she did not have adequate interpretation.

ingrained in the minds of lawyers and judges and therefore not recognized by them as having the potential to confuse.[4] Care should be taken to ascertain whether any lack of understanding of such legalese is because of lack of familiarity and context or because of failure of the interpretation, or both.

It may assist the trial court in its evaluation to question the defendant directly. Questions should be open-ended. Yes-or-no questions may mask lack of understanding, especially if both answers could be correct, e.g., "Did you graduate from high school?" A better question, and a way to get a more reliable answer, is to ask, "How far did you go in school?" If the answer is "Two miles," there may be a problem with comprehension. Another way to gain information on the efficacy of interpretation is to ask a question, wait for interpretation, then ask the defendant to repeat the question, as interpreted, back to the questioner. The parroted response may be accurate, or more similar to the understanding of the last person in a game of "Telephone." If the latter, there may be a problem with comprehension. If a court is uncertain about the level of interpretation that is appropriate and wants to consult with an uninvolved interpreter, it might contact the Texas Office for Deaf and Hard of Hearing Services (DHHS), which maintains a list of certified court interpreters and the levels at which each is certified.[5]

It is understandable that judges may be reluctant to employ intermediary interpretation. Any trial involving interpretation for a deaf defendant or witness will be greatly lengthened in time, and the greater the need for extended explanation to the deaf participant, the greater the increase in time.

---

[4] In this case, appellant mistook the sign for the unfamiliar word "witness" for the sign that means the city of Willis. Maj. op. at 6.

[5] Certification at Level V or above is preferred for intermediary interpretation.

The right to a trial must still be honored, but like hearing defendants, deaf defendants are promised a fair trial, not a perfect one.

Appellant is hearing-impaired and, according to several interpreters and her pastor, proficient in neither American Sign Language (ASL) nor signed English.[6] She became deaf before learning to speak. She testified that she could not read the officer's lips, not because she does not read lips, but because he had a moustache; she therefore can be assumed to have the ability to read lips.

Communication with appellant appears to be more difficult than with a hearing person or with many hearing-impaired persons, but it was demonstrated by her interactions with the other driver, the officer, and the trial court, to be possible; she exchanged insurance information with the other driver without interpretation, challenged part of the officer's testimony in court, and appropriately answered some of the judge's questions without interpretation. Based on the record before us and the broad discretion permitted to trial courts, we cannot find an abuse of discretion.

I join the opinion of the court.

Filed: January 14, 2009
Publish

---

[6] Signed English is a word-for-word translation of English. ASL is a separate language that differs from English in vocabulary and grammar.